IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOE MCNEELY,

    Petitioner,

  v.

STU SHERMAN, Warden,

    Respondent.

No. C 18-3250 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

Petitioner, a California prisoner, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which he subsequently amended to include previously unexhausted claims. Respondent was ordered to show cause why the amended petition (ECF No. 14) should not be granted. Respondent filed an answer with a supporting memorandum and exhibits, and petitioner filed a traverse. For the reasons discussed below, the amended petition is **DENIED**.

## STATEMENT

I.   PROCEDURAL BACKGROUND

In 2015, a jury in Alameda County Superior Court found petitioner and his co-defendant Donel Poston guilty of murder of Lionel Fluker, attempted murder of each other, and possession of a firearm by a felon. The jury also found allegations were true that both defendants used a firearm that caused great bodily injury or death when committing the murder and attempted murder. The trial court sentenced petitioner and Poston to terms of 72 years to life in state prison. On appeal, the California Court of Appeal affirmed the judgment, and the California Supreme Court denied review. Petitioner filed an unsuccessful motion in the California Court of Appeal to strike the firearms enhancement. Petitioner also filed unsuccessful habeas petitions in all three levels of the California courts.

II.  FACTUAL BACKGROUND

On the night of April 5, 2013, petitioner encountered his eventual co-defendant Poston at a gas station on Seminary Avenue in Oakland, California, where they were both filling up their cars. They had met previously, and Poston walked over to petitioner's car to buy some drugs. It is unclear if the purchase was completed, but Poston turned and walked backed toward his own car. The two men argued. Petitioner threw a drink on the ground, slapped Poston in the face, and tried to trip him. Poston's girlfriend, who was sitting in the passenger seat of Poston's car, ran inside the station's mini-mart. Petitioner started to pull either his gun or a magazine from inside his jacket, but Poston drew his gun and shot petitioner six times. Petitioner fell to the ground, and Poston ran from the station. Petitioner got up on one knee, loaded his gun, chased Poston, and fired eight shots at him. Poston dropped his gun, which had jammed, and crossed Seminary Avenue where he waved his arms and tried to climb a fence to Mills College. Petitioner's bullets did not hit Poston, but one killed Lionel Fluker who was driving home on Seminary Avenue.

The police arrested petitioner later that night at Highland Hospital and Poston approximately two months later. At trial, they each claimed that they acted in self-defense. According to Poston, after petitioner slapped and tried to trip him, Poston saw petitioner appear to pull a gun from his inside his jacket, and Poston believed that petitioner was about to shoot him. According to petitioner, he shot at Poston after Poston shot him. The evidence also included surveillance video of the incident, ballistics evidence, recordings of jailhouse phone calls, and Poston's writings and "Youtube" videos.

**ANALYSIS**

I.  STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state

court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the federal habeas court looks to the last reasoned opinion from the state courts. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

II.   ISSUES PRESENTED

   A.   JOINT TRIAL

Petitioner claims that the trial court violated his right to due process by allowing him and Poston to be tried together. Petitioner argues that he and Poston had conflicting self-defense arguments, which meant that the jury could not acquit him without convicting Poston and vice versa.

Conflicting defenses of jointly tried co-defendants does not warrant federal habeas relief

3

because "there is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses." *Runningeagle v. Ryan*, 686 F.3d 758, 777 (9th Cir. 2012) (rejecting ineffective assistance of counsel claim premised on counsel's failure to join co-defendant's motion to sever); *see also Collins v. Runnels*, 603 F.3d 1127, 1132-33 (9th Cir. 2010) (holding that *Zafiro v. United States*, 506 U.S. 534 (1993), and *United States v. Lane*, 474 U.S. 438 (1986), which analyzed severance under the Federal Rules of Criminal Procedure, did not clearly establish a constitutional standard upon which habeas relief may be granted under AEDPA).

Furthermore, as the California Court of Appeal reasonably explained, petitioner and Poston did not in fact have mutually exclusive defenses. The jury could have logically found that they both acted in self-defense. There was evidence that petitioner reached for his gun after slapping and trying to trip Poston, which allowed Poston to reasonably believe he had to shoot petitioner to defend himself against petitioner shooting him. And there was evidence supporting petitioner's contention that he was defending *him*self because petitioner shot at Poston after Poston escalated the physical altercation to a gunfight. Petitioner also contended that he shot at Poston because Poston still had his gun when he ran out of the station. Joining the two trials, therefore, did not limit the jury to believing only one defendant's self-defense theory.

Petitioner also argues that the joint trial was unfair because he and Poston were charged with attempted murder of each other and because they sought to blame each other for the murder of Fluker. Neither of these factors amounted to a violation of his constitutional rights. A joinder, or denial of severance, of counts or codefendants, may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Ibid.* In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000). No authority provides that due process requires co-defendants' interests to align. There is no prohibition on trying co-defendants who blame

4

each other for the charged crime, or even — as in this case — who are charged with trying to kill each other. Indeed, in evaluating the prejudice due to joinder, "the focus is on the cross-admissibility of evidence, i.e. whether evidence of an offense would be admissible in a separate trial on another offense and vice versa." *Walden v. Shinn*, No. 08-99012, slip op. at 23 (9th Cir. Mar. 12, 2021). Here, there was a great deal of cross-admissible because, as correctly summed by by the California Court of Appeal, the defendants "were both charged with the murder of Lionel Fluker, the remaining counts arose from the same incident and were based on the same set of facts, and most of the evidence incriminating each defendant would have also been admissible in a separate trial" (ECF No. 22, Ex. 11 at 19).

The record does not establish that jointly trying petitioner and Poston violated petitioner's right to due process or granting federal habeas relief on this claim.

2. JURY INSTRUCTION ON SELF-DEFENSE

Petitioner claims that one of the jury instructions on self-defense — CALCRIM No. 3472 — misstated California law. The instruction stated: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." Petitioner argues that this instruction conflicted with another instruction that was a correct statement of the law:

> [I]f the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting or communicate the desire to stop to the opponent or give the opponent a chance to stop fighting.

Petitioner relies on a California Court of Appeal decision, *People v. Ramirez,* 233 Cal. App. 4th 940 (2015), to support his argument that No. 3471 is correct under state law while No. 3472 is not.

The California Court of Appeal rejected petitioner's argument, distinguished *Ramirez*, and found that both jury instructions correctly stated California law:

> McNeely relies primarily on *People v. Ramirez* (2015) 233 Cal.App.4th 940 (*Ramirez*), in which a divided panel of the court concluded that *under the facts of that case*, CALCRIM No. 3472 misstated the law by effectively advising the jury "that one who provokes a fistfight forfeits the right of self-defense if the adversary resorts to deadly force." (*Id*. at p. 947.) This was contrary to the rule that "[a] person who contrives to start a fistfight or provoke a nondeadly quarrel

5

    does not thereby 'forfeit[] . . . his right to live.'" (*Id.* at p. 943.) Significantly, the prosecutor had repeatedly argued that under the instruction, it did not matter whether the defendant (who instigated a gang confrontation) had only contrived to start a fistfight. The court concluded the problem was not remedied by CALCRIM No. 3471, which provided (as it did in the case before us) that a defendant who starts a fight with nondeadly force has a right to self-defense if the opponent responds with deadly force. (*Id*. at pp. 949–950.) This was in large part because the prosecutor had argued the opposite to the jury—that "under CALCRIM No. 3472's command, 'it doesn't matter' whether under CALCRIM No. 3471 the original victim escalated a nondeadly conflict to deadly proportions." (*Id.* at p. 950.)

    No comparable misstatements were made during the closing arguments in this case. The prosecutor never suggested McNeely had forfeited his right to self-defense against Poston because he had struck the first blow with his fists, but instead focused on the evidence that McNeely had drawn his weapon immediately after hitting Poston, demonstrating an intent from the outset to use deadly force, and/or had fired the shots at Poston after Poston's gun had apparently jammed and he was already running away. The court in *Ramirez* recognized that CALCRIM No. 3472 was a correct statement of the law in a case where the defendant contrived a deadly assault from the outset, as the prosecutor argued in this case. (*Ramirez*, *supra*, 233 Cal.App.4th at p. 947.) In light of the language in CALCRIM No. 3471 making clear that the rule that an initial aggressor could respond in kind to deadly force by the victim so long as the initial assault involved nondeadly force, and in light of the absence of prosecutorial misstatements about the law on this subject, we are unconvinced the jury would have construed CALCRIM No. 3472 in the manner found problematic by the *Ramirez*.

(ECF No. 22, Ex. 11 at 39-40.)

    Petitioner's claim does not warrant federal habeas relief for two reasons. *First*, he does not assert that these instructions violated any federal constitutional provision or other federal law; he only claims a violation of state law. The federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). *Second*, the California Court of Appeal's interpretation of California law binds the federal court on habeas review. *See Hicks v. Feiock*, 485 U.S. 624, 629 (1988). Even a determination of state law made by an intermediate appellate court must be followed and may not be disregarded by a federal habeas court. *Id.* at 630 n.3. The California Court of Appeal's rejection of petitioner's interpretation of state law and its holding that CALCRIM No. 3472 correctly stated California law are interpretations of state law that bind the federal court in habeas review. Accordingly, even if petitioner's state law claim could be reviewed, it would fail because of the state court's controlling rejection of petitioner's reading of state law.

Petitioner may not obtain federal habeas relief based on this claim.

### 3.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that trial counsel was ineffective in failing to object to the use of CALCRIM No. 3472 based on the argument, set forth above, that the instruction misstated California law.  However, for the reasons described above, the state courts' ruling that the jury instruction correctly stated California law is binding here.  As a result, any objection to the jury instruction on the grounds that it violated state law would have been meritless, and trial counsel's failure to make a meritless objection was neither deficient performance nor prejudicial to the outcome of the trial.  *Cf. Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (failure to make a meritless motion cannot support a finding that defendant received ineffective assistance of counsel).  Petitioner may not receive federal relief based upon this claim.

### 4.  EVIDENCE OF POSTON'S PRIOR CONVICTIONS

Petitioner claims that the trial court violated his rights to confrontation and to due process by excluding evidence of Poston's prior arrests for sale of marijuana four, seventeen, and eighteen years before the crimes charged here.  Petitioner argues that Poston's arrests showed that Poston did not shoot petitioner in self-defense, but rather because Poston was a marijuana dealer and he thought that petitioner was selling marijuana in his territory.  Petitioner also argues that Poston's prior arrests were relevant for impeachment.

The trial court excluded the evidence, finding that Poston's arrests were irrelevant because there was no evidence that Poston knew that petitioner was selling marijuana.  The Court of Appeal upheld the trial court's ruling on the grounds that Poston's convictions were too old to show that he was still selling marijuana, and petitioner's purpose for the convictions — to show that Poston wanted to protect his marijuana-selling territory — was too speculative. Petitioner argues that there was in fact evidence to support his theory of Poston's motive: the gas station had a history of drug dealing, Poston approached petitioner to buy the drug "Molly," petitioner showed Poston marijuana baggies in his car, and after stepping away from petitioner's car, Poston said to petitioner, "You're not from [this neighborhood]."

The Supreme Court has not considered whether a trial court's exercise of discretion to

exclude evidence, under a constitutionally sound evidentiary rule, violated a defendant's right to present evidence under the Sixth and Fourteenth Amendments. *Moses v. Payne*, 555 F.3d 742, 758-60 (9th Cir. 2009). The state court's determination that the trial court did not abuse its discretion to exclude Poston's prior arrests as irrelevant — a fundamental and constitutional evidentiary rule — was not "contrary to or an unreasonable application of clearly established Supreme Court precedent" within the meaning of AEDPA because the Supreme Court has not decided the issue. *Cf. ibid.*

In any event, to obtain federal habeas relief on this claim, petitioner must show that any due process or Confrontation Clause violation caused by excluding Poston's arrest evidence was not harmless. *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (even if an evidentiary error is of constitutional dimension, the court must consider whether the error was harmless); *Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (same for Confrontation Clause violations). On federal habeas review, error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Excluding the prior arrest evidence did not impair petitioner's defense, which was based on self-defense, because Poston's motive for shooting petitioner does not dictate whether petitioner acted in self-defense. In other words, petitioner's own self-defense theory did not depend on showing that Poston did *not* act in self-defense; they both could have acted in self-defense, as explained above, or neither could have. The evidence was undisputed that petitioner initiated the fight by hitting and trying to trip Poston, and that petitioner shot at Poston after Poston shot petitioner multiple times. Petitioner's self-defense theory is that he started a fistfight, and that he shot Poston to defend himself only after Poston escalated the fistfight to a gunfight. Whether Poston did so to protect territory or to defend himself did not alter the fact that Poston shot petitioner, which was petitioner's proffered reason for shooting at Poston in self-defense. Poston's motive — and criminal record — does not alter the evidence that made petitioner's self-defense theory weak: petitioner reached for his gun before Poston shot him, instigated the confrontation, and shot at Poston while Poston was running away from the station.

The exclusion of evidence of Poston's arrests did not have a substantial or injurious

8

effect on the verdict finding petitioner guilty of attempted murder of Poston and murder of Fluker. Accordingly, petitioner may not receive habeas relief on this claim.

5. CUMULATIVE PREJUDICE

Petitioner claims that the cumulative effect of the foregoing asserted errors violated his constitutional right to due process. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *United States v. Preston*, 873 F.3d 829, 835 (9th Cir. 2017). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011). Similarly, there can be no cumulative error when there has not been more than one error. *United States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012). As discussed, there were no constitutional errors arising from the foregoing claims, and even if there had been an error in excluding the arrest evidence, the error was harmless. Accordingly, there was nothing to accumulate to the level of a constitutional violation.

6. SUPPRESSION OF EXCULPATORY EVIDENCE

Petitioner claims that the prosecutor violated his constitutional rights by suppressing exculpatory evidence, namely videos from security cameras at the gas station. He also claims that the prosecutor violated his right to due process by knowingly eliciting false testimony. On habeas review in the state courts, the superior court rejected this claim for failure to make a prima facie case for relief. The appellate and supreme courts summarily denied the claim.

A. VIDEO EVIDENCE

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985). For a *Brady*

9

1  claim to succeed, petitioner must show: (1) that the evidence at issue is favorable to the accused,
2  either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution,
3  either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice
4  ensued). *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

      At the joint preliminary hearing of petitioner and Poston, Officer Perez-Angeles testified that he asked the gas station owner to show him all the video from the gas station's surveillance cameras. At trial, he and Officer Vass testified that they watched all the videos and determined which ones had footage of the incident, which they told the owner to keep and turn over to the police. He agreed he do so, and later Officer Carpenter went to the gas station and picked up a zip drive containing the video footage the officers had requested. Carpenter gave the zip drive to Officer Perez-Angeles, who converted them to a CD which the prosecutor provided to the defense and the trial court admitted into evidence at trial. Mills College, across Seminary Boulevard from the gas station, also had a surveillance camera. The defense submitted into evidence video footage from that camera showing a man waving from across Seminary Boulevard and then a man running after him at approximately the same time as the shooting.

      Petitioner complains that the gas station video footage was only from 5 of the 16 cameras at the gas station, and did not include footage from a camera that was pointed at Seminary Boulevard. Petitioner asserts that footage from that camera would show that Poston still had his gun when petitioner shot at Poston as Poston ran away from the station and across the street, which petitioner contends would have bolstered his self-defense theory. When defense counsel questioned the officers about that camera at the preliminary hearing and at trial, however, the officers testified that they did not know whether that camera was working or video from it was among the video they reviewed. Officer Vass testified that if the officers had seen any video from that camera depicting Poston or petitioner on the Seminary Boulevard, they would have requested it from the gas station owner and turned it over to the defense.

      Petitioner has not met his burden of showing that there was any favorable or material video footage that he did not receive. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have

been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine confidence in the outcome of the trial.'" *Smith v. Cain*, 565 U.S. 73, 75 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). There is no evidence that any video footage other than what was given to the defense and showed the incident at all, much less that it was favorable to the defense. Although one of the gas station cameras faced Seminary Avenue, there is no evidence that it captured any part of the incident. The footage from the Mills College camera that did face Seminary Avenue showed a man waving his arms without a gun before being chased by another man. This would suggest that Poston waved his arms and did not still have his gun when petitioner chased him. Petitioner's hope that the gas station camera captured something different or helpful to him is not sufficient because the mere possibility that undisclosed information might have been helpful to the defense or might have affected the outcome of the trial, does not establish materiality under *Brady*. *United States v. Olsen*, 704 F.3d 1172, 1184 (9th Cir. 2013). Petitioner's speculation that additional surveillance video might have contained footage helpful to him does not establish that he did not receive material information such that his rights under *Brady* were violated.

In addition, there is no evidence that the police suppressed any video evidence of the incident. A defendant cannot claim a *Brady* violation if he was "aware of the essential facts enabling him to take advantage of any exculpatory evidence." *United States v. Shaffer*, 789 F.2d 682, 690 (9th Cir. 1986). A defendant who claims the government denied him exculpatory evidence must show that he would be unable to obtain comparable evidence by other reasonably available means. *United States v. Drake*, 543 F3d 1080, 1090 (9th Cir. 2008). Petitioner and defense counsel were at the preliminary hearing when they learned from Officer Perez-Angeles that there were additional surveillance cameras at the station, including one facing the street. Defense counsel could have requested or subpoenaed the videos from the gas station, and there is no evidence explaining why they did not or could not have done so. Therefore, the record does not support finding that the prosecution suppressed evidence in violation of *Brady*. *See United*

*States v. Bond*, 552 F.3d 1092, 1095-96 (9th Cir. 2009) (where government discloses all information necessary for defense to discover alleged *Brady* material on its own, government is not guilty of suppressing evidence).

### B. False Testimony

Petitioner claims that the prosecutor knowingly elicited false testimony from Officer Perez-Angeles and from an eyewitness. When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103-07 (1976).

Petitioner claims that Perez-Angeles falsely testified at trial that he did not collect any videos from the gas station. He and Officer Vass explained that after they reviewed the videos at the station, they asked the owner to preserve and turn over certain ones. After the owner did so, another police officer (Officer Lancaster) retrieved the requested videos from the owner on a USB drive and gave it to Perez-Angeles. Petitioner claims that this testimony was false because at the preliminary hearing, Perez-Angeles testified that he reviewed and selected the relevant video footage. Perez-Angeles's preliminary hearing testimony did not contradict the trial testimony because in both he said he *reviewed* the videos, and in neither did he claim to have *collected* them. Petitioner has not shown that Perez-Angeles's trial testimony was false or that the prosecutor knew it was false.

Petitioner also claims that a witness falsely testified at trial that he saw Poston run out of the station, drop his gun, and show petitioner that his hands were empty before petitioner shot at Poston. There is no evidence that this testimony was false. Petitioner's argument is based on his assertion that the missing video from other surveillance cameras would have contradicted the witness's account, but as discussed above there is no evidence that any missing videos captured any part of the incident. As a result, there is no evidence that the witness testified falsely, much less that the prosecutor knew it to be false.

Petitioner may not obtain habeas relief because of a *Brady* violation or the prosecutor's knowing presentation of false testimony.

12

7.     INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that trial counsel was ineffective because he did not investigate surveillance videos from the gas station's other cameras, or whether Officer Perez-Angeles lied in testifying that he had produced all the videos that depicted the incident.[1] Petitioner also claims that trial counsel was ineffective because he did not present the additional videos to the jury.[2] On habeas review in the state courts, the superior court rejected these claims for lack of prejudice from counsel's performance, and the appellate and supreme courts summarily denied them.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 686-88. (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ibid*.

*First*, petitioner has not established the underlying premise of his claim that trial counsel did not in fact investigate surveillance video evidence other than what the prosecutor produced. There is no statement by counsel in the record that he did not investigate additional surveillance video. Indeed, the record suggests that defense counsel investigated the issue because he asked Perez-Angeles at the preliminary hearing if he recalled seeing additional video footage from the gas station's camera facing Seminary Boulevard. Defense counsel also presented the surveillance video footage from Mills College onto Seminary Avenue. This indicates that counsel did investigate additional video evidence not produced by the prosecutor, and that he presented such evidence to the jury. There is no indication in the record of what video footage defense counsel did not investigate.

---

[1] This is claim number seven in the amended petition (ECF No. 14 at 88-104).

[2] This is claim number eight in the amended petition (ECF No. 14 at 105-120).

13

*Second*, there is no indication in the record that any video footage other than the footage produced by the prosecutor or submitted to the jury was helpful to petitioner or even depicted the incident. Petitioner argues that Perez-Angeles's trial and preliminary hearing testimony were inconsistent on the issue of collecting the video evidence from the gas station; he asserts that this inconsistency shows that Perez-Angeles lied about producing all of the footage depicting the incident and that he was hiding additional footage; and petitioner concludes that the hidden footage must have been exculpatory. As explained above, the first step in this argument is wrong because Perez-Angeles's testimony was not contradictory, and did not suggest that he lied or concealed additional video footage. Petitioner also alleges that the prosecutor altered the audio portion of a video from a bus that was nearby at the time of the incident; he does not present, nor does the record indicate, that was the case.

*Third*, the case against petitioner was strong, and his claim of self-defense was weak. It was not disputed that he killed Fluker, that he instigated the altercation with Poston, that Poston's gun stopped working, and that he shot Poston. There was additional evidence that he was pulling his gun or a magazine to load the gun before Poston shot him, and there was video evidence to support the witness's account that he chased after Poston and shot at him after Poston dropped his gun and ran away.

For these reasons, petitioner has not shown that trial counsel acted unreasonably in the investigation of additional video evidence or perjury by Perez-Angeles or in failing to present additional video evidence to the jury, or that there is a reasonable probability that further investigation or presentation of additional videos to the jury would have led to a different outcome at trial. Petitioner's claims of ineffective assistance of trial counsel therefore fails.

Petitioner also claims that appellate counsel was ineffective in failing to raise these claims of ineffective assistance of trial counsel on appeal. Appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason: because he declined to raise a weak issue. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See id.* at 1434. Petitioner has not shown that his

14

claims of ineffective assistance of trial counsel had merit, and therefore appellate counsel was not ineffective because he failed to raise them.

Petitioner will not be granted habeas relief on these claims.

8. SENTENCE ENHANCEMENTS

Petitioner filed a motion to amend his petition (ECF No. 37) to withdraw his claim regarding his sentence enhancements because he concedes it was not exhausted. The motion was granted. Therefore, this claim is not a basis for habeas relief. It is noted that both petitioner's motion and the Order granting the motion incorrectly identified the claim as claim number eight; it is actually claim number nine (ECF No. 14 at 121-31).

## CONCLUSION

For the foregoing reasons, the petition is **DENIED**.

A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated: April   13  , 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

15